Craig Karpe, Pro Hac Vice
**Karpe Litigation Group**
19 West 19th Street
Indianapolis, IN 46202
(317) 251-1840/ fax 317-536-0493

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PLAINTIFF | ) | Civil Case No.: 06CV1082-LAB (WMC) |
| Matthew Liang, | ) | |
| | ) | **PLAINTIFF'S SUMMARY JUDGMENT** |
| vs. | ) | **MOTION AND MEMORANDUM** |
| | ) | **IN SUPPORT** |
| DEFENDANT | ) | |
| Cal-Bay International, Inc., and | ) | |
| Roger E. Pawson, individually and as | ) | |
| President of Cal-Bay International, Inc. | ) | |
| | ) | Date:  January 21, 2009 |
| | ) | Time:  9:15 am |
| | ) | Ctrm:  9, Second Floor |
| _____ ) | | Judge: William McCurine |

**PLAINTIFF'S SUMMARY JUDGMENT MOTION
AND MEMORANDUM IN SUPPORT**

**TABLE OF CONTENTS**

I. Introduction and Summary of Argument     4

II. Designation of Evidence     4

III. Designation of Material Facts     4

IV. Application of Law

    a. Summary Judgment Standard – Contract     7

    b. Each "Binding Letter of Intent" constitutes an Enforceable Contract     8

    c. Each "Binding Letter of Intent" Includes all Necessary Elements of a Contract     10

    d. Breach of Contract by CAL-BAY and PAWSON     11

V. Damages     12

VI. Conclusion     13

# **TABLE OF AUTHORITIES**

Quadra v. Superior Court of San Francisco,
378 F. Supp. 605, 623 – 624 (ND Cal 1974)     7

Bustamante v. Intuit, Inc., 141 Cal.App. 4th 199,
208 (Cal. App. 6 Dist. 2006)     7, 10

Meyer v. Benko, 55 Cal. App. 3d 937, 942 (Cal.App.1976).     8 - 9

California Food Service Corp. v. Great American Insurance Co.,
130 Cal.App.3d 892, 897 (Cal.App. 1982).     8

Cal. Civ.Code §1550     9

Cal. Civ.Code §1565     9

Cal. Civ.Code §1580     9

Cal. Civ.Code §3307     11

## I. Introduction and Summary of Argument

Plaintiff Matthew Liang seeks summary judgment that Defendants Cal-Bay International, Incorporated and Roger Pawson breached the July 13, 2005 real estate sales contract with Plaintiff. Plaintiff requests judgment for damages in the amount of nine hundred sixteen thousand one hundred twenty-five dollars ($916,125.00) US, plus interest since the date of breach by the Defendants. The Court has personal jurisdiction over the parties and the subject matter of this action under 28 U.S.C. 1442. Both Cal-Bay International, Incorporated and Roger Pawson have appeared in this matter, and no other dispositive motions are pending.

## II. Designation of Evidence

In support of his summary judgment motion Plaintiff hereby designates the following evidence:

1. Plaintiff's Affidavit in Support of Summary Judgment, which is filed contemporaneously herewith;

2. The first Binding Letter of Intent entered into by Plaintiff and Defendants on May 12, 2005, a true, genuine and authentic copy of which is attached to Plaintiff's Affidavit in Support of Summary Judgment as Exhibit "A"; and

3. The second Binding Letter of Intent entered into by Plaintiff and Defendants on July 13, 2005, a true, genuine and authentic copy of which is attached to Plaintiff's Affidavit in Support of Summary Judgment as Exhibit "B".

## III. Designation of Material Facts

1. On or about May 12, 2005, Defendants Cal-Bay International, Incorporated (CAL-BAY) and Roger Pawson (PAWSON), acting individually and as a representative of CAL-BAY, drafted, signed, and executed a "Binding Letter of Intent", (Agreement #1) with Plaintiff Matthew Liang (LIANG) to purchase a hospital located at 1961 Georgia

4

Street, Rossland, BC, Canada (Hospital). The legal description of the Hospital is:

>Parcel A Lot 6 (173793-1) & Lots 7-15, Block 29, Plan 616,
>Twp. 9A, plus a portion of the lane.
>Kootney Land District 26 PID # 016-263-651.

Plaintiff's Affidavit in Support of Summary Judgment, (Plaintiff's Affidavit), para. 4.

2. CAL-BAY missed the first deadline to close on Agreement #1. Matthew Liang granted an extension on July 13, 2005 and a second "Binding Letter of Intent" (Agreement #2) was executed by LIANG, CAL-BAY, and PAWSON acting individually and as a representative of CAL-BAY, with identical terms as Agreement #1. The new closing date was set for July 30, 2005. In addition a real estate sale agreement was executed. Plaintiff's Affidavit, para. 5.

3. Agreement #1 and Agreement #2 provided that LIANG would be entitled to receive payment of $600,000.00 for the Hospital. The payment was to be comprised of (a) four hundred thousand dollars ($400,000.00) in Canadian Currency; (b) $185,000.00 in Canadian Currency value of Cal-Bay Class B Preferred Shares, at a market value of three cents ($.03) US per share; and (c) Fifteen Thousand ($15,000.00) Canadian in Cal-Bay Class "A" Preferred Shares, convertible at 50 to 1 for Cal-Bay common shares with a market value of three cents ($.03) US per share at the time of sale. The total value of the cash and Cal-Bay stock to be paid to LIANG at the time of sale was one million one hundred twelve thousand five hundred dollars ($1,112,500.00) US. Plaintiff's Affidavit, para. 6.

4. Agreement #1 provided that on or before the expiration of 45 days, the sales fee would be due and payable and title to the Hospital would passed from the LIANG to CAL-BAY, closing the deal. Plaintiff's Affidavit, para. 7.

5. Agreement #1 and Agreement #2 further provided that at the time of the

closing, LAING would be appointed to the Board of Directors of Cal-Bay International, Inc. Plaintiff's Affidavit, para. 8.

6. Agreement #1 and Agreement #2 also included a contract of employment, wherein upon closing, LIANG would be the Property Manager of the Hospital, for a period of two years. The terms of employment were to be four thousand five hundred dollars ($4,500.00) US per month for the first year, increasing to five thousand dollars ($5,000.00) US per month for the second year. The total two year income was to be $114,000.00 US. Plaintiff's Affidavit, para. 9.

7. LIANG has done all of the things required of him under Agreement #1 and Agreement #2 to be entitled to payment as agreed, an appointment to the Board of Directors of Cal-Bay International, Inc., and employment as Property Manager under the terms of the employment contract. Plaintiff's Affidavit, para. 10.

8. LIANG has requested and demanded that PAWSON and CAL-BAY pay the fee owed under Agreement #1 and Agreement #2, honor the terms of said agreements, and provide the employment under the terms of the employment contract. PAWSON and CAL-BAY have failed and refused to do so. Plaintiff's Affidavit, para. 11.

9. LIANG has incurred expenses pursuant to Agreement #1 and Agreement #2, and has been forced to sell the property to a third party at four-hundred thirty thousand dollars ($430,000.00) Canadian, a substantially reduced sale price to avoid further losses. LIANG also had to pay a realtor commission for the sale of eighteen thousand two hundred fifty dollars ($18,250.00) Canadian and a finder's fee of two thousand ($2,000.00) Canadian. Plaintiff's Affidavit, para. 12.

10. LIANG incurred moving expenses of fifty-three hundred dollars ($5,300.00) Canadian because of the planned relocation for the new position with CAL-BAY. LIANG also lost thirty-two thousand dollars ($32,000.00) Canadian after resigning his previous job position as a realtor in Vancouver, British Columbia, Canada, (a position

6

he had held for thirteen years). Plaintiff's Affidavit, para. 13.

11. Under both Agreement #1 and Agreement #2, the Hospital sale was to be closed and payment made in 2005. The average exchange rate of Canadian Dollars for US Dollars in 2005 was 1.211. Plaintiff's Affidavit, para. 14.

12. The total amount owed to LIANG in damages and consequential expenses for the breach of real estate sales agreement by CAL-BAY and PAWSON is nine hundred sixteen thousand one hundred twenty-five dollars ($916,125.00) US, plus interest from the July 13, 2005. Plaintiff's Affidavit, para. 15.

13. Plaintiff is entitled to eight percent (8%) annual interest from July 13, 2005 to the date of this judgment. Interest will continue to accrue on the unpaid balance at a rate of eight percent (8%) per annum. Plaintiff's Affidavit, para. 16.

### IV. Application of Law

#### a. Summary Judgment Standard – Contract

To obtain summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that under the uncontroverted facts it is entitled to a judgment as a matter of law. Quadra v. Superior Court of San Francisco, 378 F. Supp. 605, 623 – 624 (ND Cal 1974). The factual material presented by a moving party must be viewed in the light most favorable to the opposing party. Id. To satisfy the moving party's burden the evidentiary material before the court, if taken as true, must establish the absence of any genuine issue of material fact, and it must appear that there is no real question as to the credibility of the evidentiary material, so that it is to be taken as true. Id.

Under California law, "[I]f the material facts are certain or undisputed, the existence of a contract is a question for the court to decide." Bustamante v. Intuit, Inc.,

141 Cal.App. 4th 199, 208 (Cal. App. 6 Dist. 2006)(Quoting <u>Robinson & Wilson, Inc. v. Stone</u>, 35 Cal. App.3d 396, 407 (Cal. App.1973)). A contract in California will be enforced, "if it is sufficiently definite (and this is a question of law) for the court to ascertain the parties obligations and to determine whether those obligations have been performed or breached." <u>Id</u>. at 209. In addition,

> "The interpretation of a written instrument . . . is essentially a judicial function to be exercised according to the general accepted canons of interpretation so that the purpose of the instrument may be given effect. . . . In addition, it is solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence."

<u>Meyer v. Benko</u>, 55 Cal. App. 3d 937, 942 (Cal.App.1976).

### b. **Each "Binding Letter of Intent" Constitutes an Enforceable Contract**

Under California law, "a letter of intent can constitute a binding contract, depending on the expectations of the parties. These expectations may be inferred from the conduct of the parties and surrounding circumstances." <u>California Food Service Corp. v. Great American Insurance Co.</u>, 130 Cal.App.3d 892, 897 (Cal.App. 1982). Agreement #1 and Agreement #2 between LIANG, CAL-BAY, and PAWSON was intended to be a binding contract. This intent is apparent and manifest in the bold type at the top of the letter stating, "Binding Letter of Intent". Said Agreements include all necessary elements of a contract under California law. In addition, both parties signed Agreement #1 and Agreement #2. Compare this factually with <u>Meyer v. Benko</u>, 55 Cal. App. 3d 937, 943 (Cal.App.1976), where the court found,

> "The fact that this document was signed by Both parties indicates that the parties entered into a enforceable agreement. Ordinarily one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms."

The present case is factually similar in many ways to <u>Meyer v. Benko,</u> in which the court held a "deposit receipt" to be a binding contract. The California State Appeals Court

8

there stated:

> The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that is explicit provisions are contrary to his intentions or understanding. In addition the material factors common to a contract for the sale of real property are contained within the terms of the Deposit Receipt. The Deposit Receipt named the sellers, named the buyers, identified the property being sold, and specified the price for which that property was being sold. Further, it detailed the method of financing the transaction, as well as providing an allocation of various incidental costs and duties. The presence of these material factors upon the face of the document raises two inferences, both of which indicate the existence of mutual consent. First, these factors indicate that the parties had proceeded beyond the stage of mere preliminary negotiations and into the stage of actual contract formation. Moreover, the presence of this material in the document gave notice to the subscribing parties, notably the defendants, that they were entering into a binding contract by subscribing their signatures upon that document.

Meyer v. Benko, 55 Cal. App. 3d 937, 943 (Cal.App.1976). Like the deposit receipt, Agreement #1 and Agreement #2 name the seller, LIANG; name the buyer, PAWSON and CAL-BAY; identified the property being sold, Parcel A Lot 6 (173793-1) & Lots 7-15, Block 29, Plan 616; and, specified the price for which that property was being sold. In addition, the both Agreements provide a closing date for the real estate sale and set forth the method in which the payment was to occur. Specifically the Agreements both provide:

> At closing, the 600,000 payment shall be comprised of $400,000 in Canadian currency and $200,000 in Canadian Currency of Cal-Bay Publicly Traded Restricted shares. The conversion price of the shares outlined below shall be the equivalent in value of $200,000 in Canadian currency converted to a US currency price of $.03 per share.

(Plaintiff's Affidavit, attached Exhibits "A" and "B", page 1). As in Meyer v. Benko, the detail of these facts illustrate the parties had moved beyond a stage of mere preliminary negotiations and into a stage of actual contract formation. Further, as stated in Meyer v. Benko and cited above, "the presence of this material in the document gave notice to the subscribing parties, notably the defendants, that they were entering into a binding contract by subscribing their signatures upon that document." Id. at 943. CAL-BAY and

PAWSON knew they were entering into a contract with LIANG when PAWSON drafted, signed, and dated Agreement #1 and Agreement #2.

### c. Each "Binding Letter of Intent" Includes All Necessary Elements of a Contract

Under California statute a contract must consist of, "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." Cal. Civ.Code §1550. The Binding Letter of Intent includes all four of these elements. LIANG and CAL-BAY are capable of contracting, the sale of real property is a lawful object, and the required monetary payment is sufficient consideration for the sale of the real property.

The California legislature has identified three additional elements to determine if the parties consented, stating the, "consent of the parties to a contract must be: (1) free; (2) mutual; and (3) communicated by each to the other." Id at §1565. "Consent is not mutual unless the parties all agree upon the same thing in the same sense. But in certain cases defined by the Chapter on Interpretation, they are to be deemed so to agree without regard to the fact." Id at §1580. California common law provides, "[m]utual consent for a contract is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." Bustamante v. Intuit, Inc, 141 Cal.App.4th 199, 208(Cal.App.6 Dist.2006) (Citation omitted). "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." Meyer v. Benko, 55 Cal.App.3d 937, 942-943 (Cal.App.1976).

On their face Agreement #1 and Agreement #2 appear to be contracts. The documents include all the material terms of the agreement in sufficient detail, and both parties have signed and dated it. The very first paragraph of the Agreements illustrate

the parties had a *meeting of the minds* and agreed upon the terms of the contract, not once but twice, first in Agreement #1, and thereafter in Agreement #2. Both Agreements state in pertinent part:

> "This letter of intent confirms the understanding by and between CAL-BAY International, a Nevada Corporation (hereinafter referred to as "Buyer") and Mathew Liang, an individual (hereinafter referred to as "Seller") with respect to the principal terms and conditions under which the Buyer will purchase from Seller the property ( hereinafter referred to as "Property" legally described as . . . The conditions set forth below outline the terms for the **acquisition** of the Property and detailed employment terms for the **management** of the Property."

(See Plaintiff's Affidavit, Exhibit "A" and "B", page 1)(emphasis in originals).

The objective intent of the parties is demonstrated by the last sentence of the Agreements, which state, "I have read and accept the terms of this Binding Letter of Intent proposal by my signature below".   All outward manifestations of the parties actions suggest their intent to enter into a binding agreement for the sale of real property.

### d.  Breach of Contract by CAL-BAY and PAWSON

The defendants CAL-BAY and PAWSON failed close on Agreement #1 to purchase the Hospital. Defendants CAL-BAY and PAWSON offered LIANG Agreement #2 to remedy their failure to fulfill Agreement #1.   Agreement #2 is virtually identical to Agreement #1, with the exception that the closing date has been moved to July 30, 2005 in Agreement #2. CAL-BAY and PAWSON failed and refused to close on July 30, 2005, or any time thereafter. The Defendants are in material breach.

California Civil Code § 3307 provides that,

> "The detriment caused by the breach of an agreement to purchase an estate in real property is deemed to be the excess, if any, of the amount which would have been due to the seller under the contract over the value of the property to him or her, consequential damages according to proof, and interest."

11

## V. Damages

The breach of the agreement by CAL-BAY and PAWSON have caused substantial unrelieved financial damage to LIANG. Agreement #2 provided that LIANG would be entitled to receive payment of $600,000.00 for the Hospital. The payment was to be comprised of, (a) four hundred thousand dollars ($400,000.00) in Canadian Currency; (b) $185,000.00 in Canadian Currency value of CAL-BAY Class B Preferred Shares, at a market value of three cents ($.03) US per share; and (c) Fifteen Thousand ($15,000.00) Canadian in CAL-BAY Class A Preferred Shares, convertible at 50 to 1 for CAL-BAY common shares with a market value of three cents ($.03) US per share at the time of sale. (See Plaintiff's Affidavit, attached Exhibit "B"). The total value of the cash and CAL-BAY stock to be paid to LIANG at the time of sale was one million one hundred twelve thousand five hundred dollars ($1,112,500.00) US, based on an average exchange rate of Canadian Dollars for US Dollars of 1.2 in 2005.

Agreement #2 further required that at the time of the closing, LAING would be appointed to the Board of Directors of CAL-BAY International, Inc. Agreement #2 also included a Contract of Employment, whereon upon closing, LIANG would be the Property Manager of the Hospital, for a period of two years. The terms of employment were to be four thousand five hundred dollars ($4,500.00) US per month for the first year, increasing to five thousand dollars ($5,000.00) US per month for the second year. The total two year income to be paid to LIANG was to be $114,000.00 US.

LIANG has incurred expenses pursuant to the agreement and has been forced to sell the Hospital to a third party at four-hundred thirty thousand dollars ($430,000.00) Canadian, a substantially reduced purchase price, to mitigate LIANG's losses. LIANG also had to pay a realtor commission for the sale of eighteen thousand two hundred fifty dollars ($18,250.00) Canadian and a finder's fee of two thousand ($2,000.00) Canadian.

LIANG incurred moving expenses of fifty-three hundred dollars ($5,300.00)

Canadian because of the planned relocation for the new position with CAL-BAY. LIANG also lost thirty-two thousand dollars ($32,000.00) Canadian after resigning his previous job position as a realtor in Vancouver, BC, Canada, (a position he had held for thirteen years).

The average exchange rate of Canadian Dollars for US Dollars in 2005 was 1.211. For purposes of calculation, Plaintiff uses an exchange rate of 1.2. Plaintiff is entitled to following damages in US Dollars:

| | |
|---|---:|
| - Loss of sale price ($1,112,500.00 minus $358,333.33) | $754,166.67 |
| - Payment of realtor commission | 15,208.33 |
| - Payment of Finder's Fee | 1,666.67 |
| - Loss of income from new employment | 114,000.00 |
| - Income lost from quitting realtor job | 26,666.67 |
| - Moving Costs | 4416.66 |

The total amount owed to LIANG in damages is nine hundred sixteen thousand one hundred twenty-five dollars ($916,125.00) US, plus interest. LIANG is entitled to eight percent (8%) annual interest from July 13, 2005 to the date of this judgment. Interest will continue to accrue on the unpaid balance at a rate of eight percent (8%) per annum.

## VI. Conclusion

On the basis of the above described facts and law, the Plaintiff Matthew Liang respectfully requests that the Court find against Defendants Cal-Bay International, Incorporated and Roger Pawson for breach of real estate sales agreement, and grant Plaintiff summary judgment in the amount of nine hundred sixteen thousand one hundred twenty-five dollars ($916,125.00) US, and interest thereon accruing from July 13, 2005.

```
 1
 2
 3
 4
 5
 6                          KARPE LITIGATION GROUP
 7
 8
 9                          /s/ Craig R. Karpe
10                          Craig Karpe, Atty No. 18726-02
11
12                          Attorney for Plaintiff
```

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was this date served upon the Defendants by First Class United States Mail, postage prepaid, and sent to their last known address as follows:

CAL-BAY INTERNATIONAL, INCORPORATED
c/o Stephanie Burruss
2111 Palamar Airport Road
Suite 100
Carlsbad, California 92009

ROGER PAWSON
2111 Palamar Airport Road
Suite 100
Carlsbad, California 92009

CAL-BAY INTERNATIONAL, INCORPORATED
10120 S. Eastern Avenue
Henderson, NV 89052

ROGER PAWSON
10120 S. Eastern Avenue
Henderson, NV 89052

This 23 day of December, 2008.

By /s/ Craig R. Karpe
Craig R. Karpe

KARPE LITIGATION GROUP
19 West 19th Street
Indianapolis, Indiana 46202
317-251-1840