UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW LIANG,<br><br>                                    Plaintiff,<br>vs.<br>CAL-BAY INTERNATIONAL, INC., and ROGER E. PAWSON, individually and as President of Cal-Bay International, Inc.,<br><br>                                    Defendant. | CASE NO. 06cv1082-WMc<br><br>**ENTRY OF JUDGMENT** |

## I.  FACTS

Plaintiff Matthew Liang ("Plaintiff") owned a piece of real property in Canada ("the Property"). Defendant CAL-BAY International, Inc. ("CAL-BAY") agreed to purchase the Property for $600,000 Canadian. The payment was to be comprised of (1) $400,000 Canadian, (2) $185,000 Canadian of CAL-BAY Class B Preferred Stock (at $.03 US per share), and (3) $15,000 Canadian of CAL-BAY Class A Preferred Stock (at $.03 US per share).

At the time of closing, Plaintiff was to be appointed to CAL-BAY's Board of Directors and was scheduled to begin a two-year term of employment with CAL-BAY, serving as property manager for the hospital located on the Property. To compensate Plaintiff for his services as property manager, CAL-BAY agreed to pay Plaintiff $4,500 Canadian per month for the first year and $5,000 Canadian per month for the second year.

When CAL-BAY allegedly breached the agreement by failing to purchase the Property, Plaintiff sold the Property to a third party for $424,000 Canadian. This sale was completed less than six (6) months after the original agreed upon date of sale.

## II.  PROCEDURAL HISTORY

Both parties consented to magistrate jurisdiction in June 2007. (ECF No. 42.) On December 23, 2008, Plaintiff moved for summary judgment. (ECF No. 55.) On April 16, 2010, the Court granted Plaintiff's breach of contract claim, but denied Plaintiff's calculation of damages. (ECF No. 59.) The Court ordered Plaintiff to submit a detailed calculation of his damages within thirty (30) days of the summary judgment order. (ECF No. 59.) On July 23, 2010 the Court granted Plaintiff an extension of time to file his damages calculation. (ECF No. 61). On August 17, 2010, Plaintiff submitted an itemized list of his damages. (ECF No. 62.) However, the Court again ordered Plaintiff to submit a more detailed calculation of his damages. Specifically, the Court ordered Plaintiff to provide a step-by-step breakdown of how he converted the $185,000 of Class B preferred stock and $15,000 of Class A preferred stock into a value of US Dollars. (ECF No. 63.)

Despite this order, Plaintiff failed to submit a revised calculation. Due to the inactivity in the case, the Court conducted a telephonic status conference on October 13, 2011. (ECF No. 65). Following the conference, the Court ordered Plaintiff to submit his detailed calculation *no later than October 21, 2011.* (ECF No. 65.) On October 21, 2011 Plaintiff filed a motion requesting a 30-day extension to submit a revised damages calculation. (ECF No. 66). The Court ordered Plaintiff to appear for a motion hearing on November 8, 2011 regarding his request.[1] (ECF No. 67.) On November 8, 2011, Plaintiff submitted a revised calculation of damages. (ECF No. 68.)

## III.  DISCUSSION

In breach of contract actions, the burden of proof is on the party claiming damages not only to prove he or she has suffered damages but also to prove the extent of those damages with reasonable certainty. *See generally Hahn v. Wilde*, 211 Cal. 52 (1930); *Gray v. Craig*, 127 Cal.

---

[1] Defendants did not appear or otherwise contest Plaintiff's motion. (*See* ECF No. 72.)

App. 374 (1932); *Chaparkas v. Webb*, 178 Cal. App. 2d 257 (1960); *Mendoyoma, Inc. v. County of Mendocino*, 8 Cal. App. 3d 873 (1970); *Carpenter Foundation v. Oakes*, 26 Cal. App. 3d 784 (1972).

In his revised calculation of damages, Plaintiff limits his claim for damages from the stock portion of the transaction to $200,000 Canadian, which was the cash value of the shares at the time of the agreement. (ECF No. 68, Exhibit A.) Additionally, for the purposes of calculations, Plaintiff uses an exchange rate of 1.2[2] to covert all figures from Canadian to US Dollars. (ECF No. 68, Exhibit B.)

<u>Loss of sale price</u>

Under the agreement Plaintiff was to receive $600,000 made up of: (a) $400,000 in Canadian Currency and (b) $200,000 of CAL-BAY preferred stock. (ECF No. 68, Exhibit A.) The $600,000 Canadian coverts to $494,396.84 US.

Plaintiff represents that he sold the property to another buyer for $430,000 Canadian. (ECF No. 68, Exhibit D.) However, a review of Exhibit D reflects that the property was sold for $424,000 Canadian. (ECF No. 68, Exhibit D.) The $424,000 Canadian coverts to $353,333.33 US. Therefore, the total loss of sale price is $494,393.84 - $353,333.33 = $141,060.51 US.

<u>Payment of realtor commission</u>

Plaintiff represents he had to pay a realtor commission of $18,250 Canadian for the sale of the property. (ECF No. 68, Exhibit C.) The $18,250 Canadian coverts to $15,208.33 US.

<u>Payment of finder's fee</u>

Plaintiff represents he had to pay a finder's fee of $2,000 Canadian for the sale of the property. (ECF No. 68, Exhibit C.) The $2,000 Canadian coverts to $1,666.67 US.

<u>Loss of income from new employment</u>

Plaintiff represents the terms of his employment agreement provided that he would receive $4,500 US per month for the first year, increasing to $5,000 US per month for the second year. (ECF No. 68, Exhibit A.) However, the agreement reads "an agreed monthly salary of $4,500.00

---

[2] On August 1, 2005 the exchange rate was 1.2136 Canadian dollars per US dollar. (ECF No. 68, Exhibit B.)

1  in year one and increasing to $5,000 for year two in Canadian currency." (ECF No. 68, Exhibit
2  A.) Therefore, his total salary for two years was $114,000 Canadian, not $114,000 US. The
3  $114,000 Canadian coverts to $95,000 US.

Income lost from quitting realtor job

5  Plaintiff represents he lost $32,000 Canadian after resigning his previous job position as a
6  realtor in Vancouver, BC, Canada. (ECF No. 68, Exhibit G.) To support this amount of damages,
7  Plaintiff attaches his Canadian Tax Revenue Documents from 2002, 2003, 2004, and 2005.
8  However, these documents do not prove Plaintiff lost $32,000 Canadian after resigning from his
9  previous job because the tax documents only list his total "self-employed commissions" for each
10 year. Plaintiff has had numerous opportunities to submit proof of his damages so the Court can
11 fully analyze the reasonableness of his damages. The Court has ordered Plaintiff twice to provide
12 detailed calculations and proof of his damages. (*See* ECF Nos. 59, 63.) The Court has also given
13 Plaintiff two extensions to submit supporting materials for his damages calculations. (*See* ECF
14 Nos. 61, 66.) Despite three opportunities to prove his damages,[3] Plaintiff still has not
15 demonstrated with reasonable certainty the extent of his damages for income lost from quitting his
16 realtor job. The Court is not inclined to give Plaintiff another opportunity to submit further proof
17 of his damages. Therefore, Plaintiff is not entitled to damages for income lost from quitting his
18 realtor job because he has failed to prove the extent of these damages with reasonable certainty.
19 *See generally Hahn*, 211 Cal. 52; *Gray*, 127 Cal. App. 374; *Chaparkas*, 178 Cal. App. 2d 257;
20 *Mendoyoma*, 8 Cal. App. 3d 873; *Carpenter Foundation*, 26 Cal. App. 3d 784.

Moving costs

22 Plaintiff represents he incurred $2,652.12 Canadian for moving expenses because of the
23 planned relocation for the new position with CAL-BAY. (ECF No. 68, Exhibit E; ECF No. 68,
24 Exhibit F.) The $2,652.12 Canadian coverts to $2,188.18 US.

Inspection costs

26 Plaintiff represents he incurred $1,926 Canadian for inspection costs . (ECF No. 68,

---

[3] Plaintiff originally submitted his damages in his motion for summary judgment. (ECF No. 55.) On August 17, 2010, Plaintiff submitted a revised calculation of his damages. (ECF No. 62.) On November 8, 2011, Plaintiff again submitted a revised calculation of his damages. (ECF No. 68.)

1  Exhibit H.)  The $1,026 Canadian coverts to $1,540.80 US.

2       Notary Public fee

3       Plaintiff represents he incurred $550 Canadian for notary public services.  (ECF No. 68,

4  Exhibit I.)  The $550 Canadian coverts $440 US.

5       Davies Sales and Service fee

6       Plaintiff represents he incurred $309.60 Canadian for extra garbage expenses.  (ECF No.

7  68, Exhibit J.)  The $309.60 Canadian coverts to $247.68 US.

8       **Therefore, Plaintiff is entitled to $258,352.17 US, plus prejudgment and postjudgment**

9  **interest.**

10      The following table provides a list of damages converted from Canadian dollars to US dollars.

| **Damages** | **Canadian Dollars** | **US Dollars** |
|---|---|---|
| Loss of sale price | $176,000.00 | $141,060.51 |
| Payment of realtor commission | $18,250.00 | $15,208.33 |
| Payment of finder's fee | $2,000.00 | $1,666.67 |
| Loss of income from new employment | $114,000.00 | $95,000.00 |
| Loss of income from quitting realtor job[4] | N/A | N/A |
| Moving costs | $2,652.12 | $2,188.18 |
| Inspection costs | $1,026.00 | $1,540.80 |
| Notary Public fee | $550.00 | $440.00 |
| Davies Sales and Service fee | $309.60 | $247.68 |
| **TOTAL** | | **$257,352.17** |

     In diversity actions, state law determines the rate of *prejudgment* interest whereas federal law provides the rate of *postjudgment* interest.  *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1107 (9th Cir. 1998).  Pursuant to California Civil Code Section 3289(b), the legal interest rate after a breach of contract is ten percent (10%) per annum.  Therefore, Plaintiff is entitled to ten percent (10%) annual prejudgment interest from July 30, 2005 to the date of judgement, April 16, 2010.  (*See* ECF No. 59.)  Plaintiff may only recover simple interest and may not compound the

---

[4]Plaintiff has not provided the Court with sufficient evidence to substantiate this award of damages.

- 5 -                                                                                                                                    06cv1082-WMc

interest by adding unpaid interest to the principal. *Ferrellgas, Inc. v. American Premier Underwritiers, Inc.*, 79 F.Supp.2d 1160, 1168 (C.D.Cal. Dec. 20, 1999); *see also Westbrook v. Fairchild*, 7 Cal.App.4th 889, 893–94 (1992).

The following table calculates Plaintiff's prejudgment interest from July 30, 2005 -April 16, 2010.

| Date | Annual Interest Rate | Interest Accrued |
|---|---|---|
| 07/30/05-07/30/06 | 10% | $25,735.22 |
| 07/30/06-07/30/07 | 10% | $25,735.22 |
| 07/30/07-07/30/08 | 10% | $25,735.22 |
| 07/30/08-07/30/09 | 10% | $25,735.22 |
| 07/30/09-04/16/10 | 10% | $18,331.94 |
| **TOTAL** | | **$121,272.82** |

Postjudgment interest is calculated according to 28 U.S. C. Section 1961. *North Corp. v. Triad Int'l Marketing, S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988). Postjudgment interest accrues from the date of the "judgment in which damages are sufficiently ascertained." *Am. Tel. & Tel. Co. v. United Computer Sys., Inc.*, 98 F.3d 1206, 1210 (9th Cir. 1996); *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990).

//
//
//
//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

Accordingly, the Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff, Matthew Liang, and against Defendants Cal-Bay International, Inc., and Roger E. Pawson, individually and as President of Cal-Bay International, Inc., on all claims as follows:

a. $257,352.17 US in damages;

b. $121,272.82 US in prejudgment interest; and

c. postjudgment interest at the federal rate pursuant to 28 U.S.C. Section 1961, to be calculated "from the date of the entry of judgment at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

**IT IS SO ORDERED.**

DATED: April 13, 2012

_WMcCurine Jr._

Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court